IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01960-PAB-KMT

LU CELIA KINARD,

    Plaintiff,

v.

CYNTHIA ROTHROCK KINARD, individually and
as Administratrix of the Estate of Walter A. Kinard,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on plaintiff Lu Celia Kinard's motion for summary judgment [Docket Nos. 35, 77] and defendant Cynthia Rothrock Kinard's cross motion for summary judgment [Docket Nos. 68, 81].[1] The motions are fully briefed and ripe for disposition.

**I. BACKGROUND**

Pursuant to 28 U.S.C. § 1335(a)(1), North American Company for Life and Health Insurance ("North American") filed an interpleader complaint August 17, 2010, naming plaintiff and defendant as defendants because they had filed conflicting claims to a life insurance policy issued by North American. On August 18, 2010, the Court granted [Docket No. 4] North American's motion to deposit the disputed amount of

---

[1] Each motion appears twice in this case's docket because, due to the parties' violations of Federal Rule of Civil Procedure 5.2(a), the Court ordered that the original motions be sealed and that the parties resubmit complying motions. *See* Docket No. 76. In light of the parties re-filing of the motions, the original motions will be deemed moot.

$409,926.19, including accrued interest, into the Registry of the Court [Docket No. 3]. By order dated April 21, 2011 [Docket No. 61], the Court dismissed North American from this action and realigned the parties.

The life insurance policy at issue in this case was issued to Walter Alan Kinard ("Kinard"). Plaintiff Lu Celia Kinard married Kinard in 1974. They divorced on October 24, 2002 pursuant to a Decree of Dissolution of Marriage (the "divorce decree") issued by the District Court of Jefferson County, Colorado. *See* Docket No. 77-1. The divorce decree incorporated by reference a Separation Agreement, *see* Docket No. 77-2, between plaintiff and Kinard. The Separation Agreement provided, among other things, that

> [Kinard] shall continue [plaintiff] as sole beneficiary under his North American Life Insurance Company level term life insurance policy and will continue to pay the premium thereon. This policy is intended to provide the approximate equivalent of the amount of maintenance and child support to [plaintiff] that would be lost in the event of [Kinard's] death. [Kinard] shall have the option of substituting a decreasing amount of life insurance under another plan of life insurance on his life at his option. [Kinard's] obligation to continue [plaintiff] as beneficiary of this life insurance policy shall terminate when [Kinard] shall no longer be obligated to pay child support and maintenance under this agreement.

Docket No. 77-2 at 8. In June 2003, Kinard signed a Beneficiary and Owner Change Request Form making defendant the beneficiary of the North American policy. As of June 2003, Kinard's child support and maintenance obligations had yet to terminate. By the time of his death on September 12, 2009, Kinard's child support obligation had already been fulfilled. Had he lived, he would have been required to pay maintenance to plaintiff for an additional fourteen months.

In her motion for summary judgment, plaintiff argues that, because Kinard's

change of the beneficiary of the North American policy violated the Separation Agreement, his attempt to do so had no legal effect.  Consequently, plaintiff argues that she is entitled to all of the life insurance proceeds.  Defendant, in her cross-motion, agrees that Kinard was not permitted to change the beneficiary in the manner he did.  However, defendant contends that the policy was intended as security for Kinard's maintenance and child support obligations.  Therefore, agues defendant, plaintiff should receive the total amount of maintenance plaintiff lost on account of Kinard's death, with defendant receiving the remainder.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a

court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010). However, where, as here, there are cross motions for summary judgment, the reasonable inferences drawn from affidavits, attached exhibits, and depositions are rendered in the light most favorable to the non-prevailing party. *Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004). Furthermore, "[w]hen the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks omitted).

### III. DISCUSSION

The parties dispute the implication of the Separation Agreement on their respective entitlement to the life insurance proceeds. The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1335 and, therefore, will apply state law to the parties' dispute over the insurance proceeds. *See* 7 Wright, Miller, et al., *Federal Practice & Procedure: Civil* § 1713 (3d ed. 2001) ("[S]tate law governs in . . . statutory-interpleader cases since the basis of the court's jurisdiction is diversity of citizenship[.]"); *see generally Great Falls Transfer & Storage Co. v. Pan Am. Petroleum Corp.*, 353 F.2d 348 (10th Cir. 1965). The Separation Agreement provides that it "shall be construed in accordance with the laws of the State of Colorado." Docket No. 81-3 at 13, § 19.11.

Under Colorado law, "[i]nterpretation of a written contract is a question of law for

4

the court." *In re Marriage of Thomason*, 802 P.2d 1189, 1190 (Colo. App. 1990) (citing *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo. 1984)). The Court must "ascertain the parties' intent at the time of execution, and that intent is determined primarily from the instrument itself." *In re Marriage of Sinkovich*, 830 P.2d 1101, 1102 (Colo. App. 1992) (citing *Hefley Ranch, Inc. v. Stewart*, 764 P.2d 415 (Colo. App. 1988)). "Parol evidence of intent is generally admissible only if the contract terms are ambiguous." *Id.* (citing *In re Marriage of Piper*, 820 P.2d 1198 (Colo. App. 1991)). Here, the parties have not submitted any parol evidence and, having filed cross motions for summary judgment, both contend that the Court can determine entitlement to the proceeds as a matter of law from examination of the instrument itself. *See Atlantic Richfield Co.*, 226 F.3d at 1148 ("When the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties . . .") (internal quotation marks omitted). "The sole fact that the parties disagree as to the meaning of the terms of a contract does not itself create an ambiguity." *In re Marriage of Thomason*, 802 P.2d at 1190.

Plaintiff contends that she is entitled to the entirety of the life insurance proceeds because Kinard, as of the time of his death, was obligated to maintain her as the policy's beneficiary. Defendant argues that the insurance policy served only as security for Kinard's child support and maintenance obligations and, therefore, plaintiff's interest in the policy is limited to the amount of maintenance plaintiff did not receive due to Kinard's death.

The parties have not cited a Colorado case on the precise issue presented here.

5

In *Konczyk v. Konczyk*, 843 A.2d 1190, 1195 (N.J. Super. 2003), the court similarly noted that, "[u]nfortunately, there are no cases in New Jersey that squarely address the issue . . . where the obligor died, alimony is to be paid for a specified timeframe and the insurance policy considerably exceeds the remaining obligation." In this case, the parties do not dispute that plaintiff, as a "person who is required to be named as the beneficiary of life insurance under a divorce decree[,] has a vested equitable interest in such life insurance." *Konczyk*, 343 A.2d at 1196 (citing 22 *Causes of Action* § 463, Sec. 2). The parties disagree, however, as to "the amount of that equitable interest." *Konczyk*, 843 A.2d at 1196.

"[I]n cases where the insurance obligation functions as security for the support obligation, courts in other states have shown a willingness to limit payment of insurance proceeds to conform with the underlying obligation and avoid a windfall to the supported spouse or his/her estate." *Id.*; *see* 22 *Causes of Action* § 463, Sec. 2 ("The characterization of life insurance as security for other obligations under a divorce decree may affect the availability or extent of recovery. Generally, an obligation to maintain insurance and the entitlement of the insured's former spouse or child to the proceeds will not survive the satisfaction of the obligation the insurance was intended to secure. Similarly, if the underlying obligation survives, recovery of proceeds may be limited to the extent of any unpaid support, alimony, or property obligation existing at the time of insured's death."). Plaintiff does not dispute this statement of the law, i.e., that, if it was the clear intent of the parties that the North American policy functioned as security for the maintenance obligation, her equitable interest would be determined by reference to that obligation. Rather, plaintiff argues that the "Separation Agreement

does not state that the life insurance is security." Docket No. 103 at 16. This assertion ignores the Separation Agreement's clear statement that the North American "policy is intended to provide the approximate equivalent of the amount of maintenance and child support to [plaintiff] that would be lost in the event of Husband's death." Docket No. 81-3 at 7, ¶ 14. Plaintiff does not claim that the amount of the policy is now approximately equivalent to the amount of maintenance that was lost.

Instead, plaintiff contends, like the plaintiff in *Konczyk*, that "if the parties had wanted to further reduce the face amount of the insurance, they could have done so." *Konczyk*, 843 A.2d at 1196. But the parties did provide a means for the insurance policy to be reduced over time as the remaining maintenance obligation decreased. Pursuant to the Separation Agreement, Kinard retained the "option of substituting a decreasing amount of life insurance under another plan of life insurance on his life at his option." Docket No. 81-3 at 7, ¶ 14; *see Head v. Metropolitan Life Ins. Co.*, 449 N.W.2d 449, 453 (Minn. Ct. App. 1989) (affirming decision to grant former wife full amount of policy which was meant to be security for spousal maintenance in part because, as the trial court recognized, "it would have said so if it had meant that [the decedent] need only maintain only so much insurance as he unilaterally determined was necessary to fund" the spousal support obligations).[2] While plaintiff acknowledges

---

[2]The *Head* court also noted "the following special circumstances":
[The decedent] left the trial court with no choice other than awarding [the former wife] the entire insurance because [the decedent] did not fully inform the court about the insurance; the $1,000 per month maintenance award was interim because of uncertainty about [the decedent's] income at his new job and [the former wife's] earning capacity; the $1,000 was substantially below the $2,400 found to be [the former wife's] reasonable monthly expenses; and [the former wife's] health problems and absence

that the Separation Agreement permitted the reductions, she argues that, because Kinard did not exercise the option, she is entitled to the entirety of the insurance proceeds. The Separation Agreement permitted Kinard to "maintain only so much insurance as he unilaterally determined was necessary to fund" his remaining obligations, creating the possibility that plaintiff would have recovered the entire amount of the policy if he had never changed the beneficiary. That fact, however, does not require that plaintiff recover an amount far exceeding her equitable interest in the policy simply because the decedent did not comply with the Separation Agreement.[3]

Furthermore, as support for interpreting the insurance policy as security, the

---

>  from the workplace for 25 years. These facts indicate this was an "exceptional case."

449 N.W.2d at 454. The parties here rely solely upon the plain terms of the Separation Agreement and present no special circumstances warranting an award far exceeding the remaining amount of support secured by the policy. To the extent *Head* can be read to require full payment to plaintiff under the circumstances presented in this case, the Court does not believe that Colorado courts would agree. *Cf. Head*, 449 N.W.2d at 456 ("Courts in other jurisdictions when faced with similar situations have held that an obligee spouse is entitled to receive only as much of the proceeds of an insurance policy as is necessary to properly secure the future maintenance or support obligations in issue. These courts reason that the purpose for which the obligor is required to maintain insurance governs the determination of how much of the proceeds the obligee receives.") (citations omitted) (Randall, J., dissenting).

[3]Plaintiff attempts to distinguish *Konczyk* on its facts by noting that, in *Konczyk*, the "divorce decree did not contain any provisions in it . . . that allowed ex-husband [sic] to reduce the amount of the life insurance to the amount of support owed as time passed." Docket No. 103 at 15. While that is a factual difference, it is one that supports defendant's position in this case. Plaintiff makes no effort to explain how providing Kinard with the ability to substitute a lower-value policy commensurate with his outstanding obligations somehow calls into question whether the policy was intended as security for those obligations. *Cf. In re: Estate of Hodges*, 807 So.2d 438, 446 (Miss. 2002) ("The amount was to be reduced by each subsequent alimony payment made by Jeff. The instrument undisputably manifested the parties' intention to provide a minimum amount of alimony payments to [the wife] and established a death provision which was tied to the alimony obligation.").

8

*Konczyk* court noted that the "obligation ended when the alimony was no longer due." 843 A.2d at 1196-97. The same is true here. *See* Docket No. 81-3 at 7, ¶ 14 (providing that the obligation to maintain the policy terminated at such time as Kinard "shall no longer be obligated to pay child support and maintenance"). In sum, as in *Konczyk*, Kinard had "no independent duty – aside from securing the alimony obligation – to provide life insurance for the plaintiff." *Konczyk*, 843 A.2d at 1196-97.

Plaintiff relies upon *McLeod v. Provident Mut. Life Ins. Co.*, 526 P.2d 1318 (Colo. 1974), *Great American Reserve Ins. Co. v. Maxwell*, 555 P.2d 988 (Colo. App. 1976), and *Newton v. Newton*, 472 P.2d 718 (Colo. App. 1970), to support her arguments. However, nothing in these cases calls the Court's conclusion into question.

*McLeod v. Provident Mut. Life Ins. Co.* involved an interpleader action between the widow and former wife of a policyholder. During the divorce action from his former wife, the court ordered the husband to maintain his minor children as primary beneficiaries. The husband, however, later named his new wife as the primary beneficiary and his children as secondary beneficiaries. After his death, the life insurance company filed an interpleader action when the widow refused to release her rights under the policy in favor of the former spouse and children. Plaintiff here claims that the court in *McLeod* "ordered the life insurance policy be used to protect the child support payments of the five children of the marriage." Docket No. 103 at 13. Plaintiff misreads *McLeod*. The only issue in *McLeod* was whether the divorce court's order requiring the husband to maintain his children as primary beneficiaries was void. *McLeod* held that it was not. The court did not discuss the relationship between the life

9

insurance obligation and any separate child support obligation which might limit the children's interest in the policy. Moreover, the court noted that, although the divorce court's order regarding the beneficiaries was a valid judgment since no one had challenged it when it entered, it was nevertheless improper. *Id.* at 239. Thus, *McLeod* is neither "exactly on point" as plaintiff claims, nor does it provide any support for plaintiff.

In *Great American Reserve Ins. Co. v. Maxwell*, the "language employed in the divorce stipulation compel[led] the conclusion that decedent obligated himself to maintain the policy for the benefit of his three children and for no other person." *Maxwell*, 555 P.2d at 990. The decree "provided that . . . the decedent would 'make no further changes as to beneficiaries.'" *Id.* at 989. Here, by contrast, Mr. Kinard's obligation was explicitly tied to his maintenance obligations. He had the option of substituting a decreasing amount of life insurance and had no obligation to maintain the policy after complying with his support obligations.[4] Plaintiff's interest in the policy, therefore, is not comparable to the interest held by the beneficiaries in *Maxwell*. *Cf. Newton*, 472 P.2d at 719 (affirming trial court's decision that decedent could not change the beneficiary of a life insurance policy in light of the parties' clear "intent that the beneficiaries as of the date of the agreement be made irrevocable"). Instead, plaintiff's interest is limited to the maintenance amount lost due to Kinard's death.

---

[4]In fact, the change in beneficiary was not strictly prohibited by the Separation Agreement. Kinard could have switched beneficiaries on the North American policy so long as he also substituted "another plan of life insurance." Docket No. 81-3 at 7, ¶ 14. It was decedent's failure to replace that policy with one sufficient to secure his outstanding obligations that was impermissible.

The issue that remains is the calculation of the amount of lost maintenance. Had Kinard lived, his maintenance obligation would have ceased on November 14, 2010. Defendant asserts that Kinard would have been required to pay $1,576.00 per month for fourteen additional months, resulting in a total loss of maintenance of $22,064.00. *See* Docket No. 81 at 6, ¶¶ 9, 11. Plaintiff contends that the Separation Agreement provided monthly maintenance in the amount of $2,208.00, *see* Docket No. 81-3 at 8, ¶ 15, and that Kinard's later reduction of that amount was improper. *See* Docket No. 103 at 2, ¶¶ 7, 9. Using that amount, plaintiff would have been entitled to receive an additional $30,912.00 in maintenance had Kinard survived until November 14, 2010. The Court finds that this constitutes a material dispute which cannot be resolved upon the present record.

For the foregoing reasons, it is

**ORDERED** that plaintiff Lu Celia Kinard's motion for summary judgment [Docket No. 35] and defendant Cynthia Rothrock Kinard's cross motion for summary judgment [Docket No. 68] are deemed moot. It is further

**ORDERED** that plaintiff Lu Celia Kinard's motion for summary judgment [Docket No. 77] is DENIED. It is further

**ORDERED** that defendant Cynthia Rothrock Kinard's cross motion for summary judgment [Docket No. 81] is GRANTED in part and DENIED in part. It is further

**ORDERED** that defendant's motion to strike plaintiff's response to defendant's cross motion for summary judgment [Docket No. 101] and plaintiff's motion for leave to resubmit her response to defendant's cross motion for summary judgment [Docket No.

105] are DENIED as moot.

DATED September 26, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge